UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PATRICK GUILLORY,

|                          |                    |
|--------------------------|--------------------|
|              Plaintiff,  | DECISION           |
|      v.                  | and                |
|                          | ORDER              |

CRAIG SKELLY, SGT. THOMAS HANNAH,                 12-CV-00847S(F)
OFFICER JOHN RAFFERTY, DSS JAMIE
LAMANNA, SUPERINTENDENT THOMAS
GRIFFIN, CAPTAIN KEVIN SIGNOR, and
CAPTAIN HARRY HETRICK,

                              Defendants.
_____

APPEARANCES:          PATRICK GUILLORY, *Pro Se*
                      09-B-0714
                      Clinton Correctional Facility
                      Box 2001
                      Dannemora, New York  12929

                      ERIC T. SCHNEIDERMAN
                      NEW YORK STATE ATTORNEY GENERAL
                      Attorney for Defendants
                      MICHAEL J. RUSSO, and
                      DAVID J. SLEIGHT,
                      Assistant Attorneys General, of Counsel
                      Main Place Tower
                      Suite 300A
                      350 Main Street
                      Buffalo, New York 14202

## **JURISDICTION**

This case was referred to the undersigned by Honorable William M. Skretny on

September 10, 2014, for all pretrial motions. The matter is presently before the court on

Plaintiff's motions filed November 25, 2013, seeking preservation of evidence (Doc. No.

32), and a transfer to another correctional facility (Doc. No. 33), Plaintiff's motion filed

December 9, 2013 to compel the production of evidence and to sanction Defendants (Doc. No. 41), and Plaintiff's motion filed December 20, 2013 seeking injunctive relief (Doc. No. 69).

## BACKGROUND and FACTS[1]

Plaintiff Patrick Guillory ("Plaintiff" or "Guillory"), proceeding *pro se*, commenced this civil rights action on September 5, 2012, while incarcerated at Southport Correctional Facility ("Southport" or "the correctional facility"), alleging Defendants, all employees of New York State Department of Corrections and Community Supervision ("DOCCS"), retaliated against Plaintiff for filing a harassment complaint against a correctional officer who Plaintiff alleges confiscated from him a copy of the United States Constitution, which Plaintiff had torn out of a book for a paralegal course in which Plaintiff's parents had paid $ 750 for Plaintiff to enroll.  Defendants to this action include Craig Skelly ("Skelly"), Sgt. Thomas Hannah ("Hannah"), Officer John Rafferty ("Rafferty"), DSS Jamie LaManna ("LaManna"), Superintendent Thomas Griffin ("Griffin"), Captain Kevin Signor ("Signor"), and Captain Henry Hetrick ("Hetrick") (together, "Defendants").

In particular, Plaintiff alleges Defendants framed Plaintiff by planting tobacco in Plaintiff's shoe which was found during a search, and then issuing a false misbehavior report charging Plaintiff with smuggling contraband, and denying Plaintiff due process in the ensuing disciplinary hearing held in connection with the claimed false misbehavior report.  Plaintiff further claims after the planted tobacco was discovered, Defendants subjected Plaintiff to excessive force and issued a deprivation order denying Plaintiff

---

[1] The Facts are taken from the pleadings and motion papers filed in this action.

showers, exercise, cleaning supplies for his cell, hygiene products, and haircuts.  On

March 12, 2013, Defendants' answer (Doc. No. 18) was filed.

On May 10, 2013, Plaintiff filed his First Set of Interrogatories, Request for

Production of Documents, and Request for Admissions (Doc. No. 20) ("Plaintiff's First

Discovery Demand"), containing a total of 287 individual discovery requests.  On June

25, 2013, Plaintiff filed his Second Set of Interrogatories, Request for Production of

Documents, and Request for Admissions (Doc. No. 28) ("Plaintiff's Second Discovery

Demand"), containing a total of 200 individual discovery requests.  At a July 24, 2013

scheduling conference before the undersigned, the parties stipulated that Defendants

had until September 23, 2013 to respond to all 487 of Plaintiff's individual items sought

in Plaintiff's First and Second Discovery Demands (together, "Discovery Demands").

By letter to Plaintiff dated September 23, 2013 (Doc. No. 79-1) ("September 23,

2013 Letter"), Assistant Attorney General David J. Sleight ("AAG Sleight"), requested

Plaintiff agree to a 30-day extension of the discovery deadline.  In an affidavit filed

October 24, 2013 (Doc. No. 31) ("October 24, 2013 Affidavit"), Plaintiff averred he did

not oppose the request, October 24, 2013, Affidavit ¶ 3, and that, given that the

subsequent deadline extension requested was about to expire, Plaintiff also did not

oppose extending the discovery cutoff for an additional 30 days, *id.* ¶ 5, such that

Plaintiff agreed the new deadline for discovery was November 1, 2013.  *Id.* ¶ 7.  By

letter to Plaintiff dated October 30, 2013 (Doc. No. 79-2) ("October 30, 2013 Letter"),

AAG Sleight requested Plaintiff agree to extend the discovery deadline to November 22,

2013.

On November 18, 2013, Plaintiff was transferred from Greene Correctional Facility ("Greene"),[2] to Southport.  On November 25, 2013, Plaintiff filed a motion seeking a court order directing Defendants to preserve video and audio recordings to support injunctive relief relevant to Plaintiff's placement on November 18, 2013, in Special Housing Unit ("SHU") D Block, which Plaintiff maintains is solitary confinement intended as punitive segregation, rather than B Block which is administrative segregation for orientation into a new facility. (Doc. No. 32) ("Motion for Litigation Hold"). Plaintiff further maintains he remained in D Block beyond the orientation time period and never attended any orientation.  Motion for Litigation Hold at 5.  Also on November 25, 2013, Plaintiff filed a motion demanding a transfer from Southport to another correctional facility (Doc. No. 33) ("Motion for Transfer"), asserting Defendants arranged for Plaintiff's transfer back to Southport to further retaliate against Plaintiff for filing grievances.  On December 2, 2013, Plaintiff filed a supplement to his Motion for Litigation Hold (Doc. No. 34) ("Plaintiff's Litigation Hold Supplement"), advising that since being transferred back to Southport and placed in D Block housing, Plaintiff had also been denied Kosher meals, and requesting preservation of all audio and video recordings that Plaintiff maintains will substantiate his claims that numerous requests for Kosher meals were ignored.

On December 9, 2013, Plaintiff filed a motion seeking to compel Defendants' responses to discovery requests and to sanction Defendants for failing to timely respond (Doc. No. 41) ("Motion to Compel").  On December 10, 2013, Defendants filed numerous responses to Plaintiff's discovery requests. (Docs. Nos. 35-40).  By letter to

---

[2] Although Plaintiff was incarcerated at Southport when he commenced this action, according to the docket, Plaintiff subsequently was transferred to Bare Hill Correctional Facility on October 12, 2012, then to Upstate Correctional Facility on November 27, 2012, and to Greene on February 1, 2013.

Plaintiff dated December 10, 2013 (Doc. No. 79-3) ("December 10, 2013 Letter"), AAG Sleight enclosed responses to some of Plaintiff's discovery requests, and advised the remaining responses would be provided in two weeks, and requested Plaintiff consent to a further extension of the discovery deadline to accommodate the late delivery of such discovery responses.  Additional responses to Plaintiff's discovery requests were filed by Defendants on December 13, 2013 (Docs. Nos. 42 and 43), and December 16, 2013 (Docs. Nos. 44-66).

On December 19, 2013, Plaintiff filed an Affidavit (Doc. No. 68) ("Plaintiff's Affidavit"), advising Defendant LaManna had admitted Plaintiff was placed in D Block SHU to retaliate against Plaintiff for commencing legal action against LaManna, and demanding a further litigation hold on the audio recording outside Cell 18 in D Block on November 26, 2013 between 8:00 A.M. and 11:30 A.M.   On December 20, 2013, Plaintiff filed a motion for injunctive relief (Doc. No. 69) ("Motion for Injunctive Relief"), seeking to be transferred within Southport from punitive SHU to administrative SHU, as well as an order directing Defendants at Southport not to interfere with Plaintiff's legal mail.

Defendants filed additional answers to Plaintiff's interrogatories on December 24, 2013 (Doc. No. 70), January 8, 2014 (Doc. No. 75), January 10, 2014 (Doc. No. 77), and February 5, 2014 (Doc. No. 84), and further discovery responses on December 27, 2013 (Docs. Nos. 71-74).

On January 17, 2014, Defendants filed the Declaration of AAG Sleight in Opposition to Plaintiff's Motion to Compel and for Sanctions (Doc. No. 79) ("Defendants' Response – Motion to Compel").

In opposition to Plaintiff's Motion for Injunctive Relief, Defendants filed on January 31, 2014, the Declaration of Jamie LaManna (Doc. No. 81) ("Lamanna Declaration"), and, on February 3, 2014, Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for an Injunction (Doc. No. 83) ("Defendants' Response – Injunctive Relief").  On February 3, 2014, Plaintiff filed a reply in further support of Plaintiff's Motion to Compel (Doc. No. 85) ("Plaintiff's Reply – Motion to Compel").  On February 6, 2014, Plaintiff filed a Reply in further support of Plaintiff's Motion for Injunctive Relief (Doc. No. 86) ("Plaintiff's Reply – Injunctive Relief").  On June 12, 2014, Defendants filed Defendants' Supplemental Responses to Plaintiff's Requests for Production of Documents (Doc. No. 99) ("Defendants' Supplemental Discovery Responses").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion for Litigation Hold is DENIED; Plaintiff's Motion for a Transfer is DENIED; Plaintiff's Motion to Compel is GRANTED in part, DENIED in part, and DISMISSED as moot in part; Plaintiff's Motion for Injunctive Relief is DISMISSED as moot.

## **DISCUSSION**

### 1.    **Motions for a Litigation Hold, for Transfer, and for Injunctive Relief**

Plaintiff's Motions for Litigation Hold, for Transfer, and for Injunctive Relief all pertain to Plaintiff's placement in D Block SHU at Southport.  In particular, Plaintiff's Motion for Litigation Hold seeks a court order directing Defendants to preserve as evidence of Plaintiff's placement in D Block SHU at Southport, which Plaintiff maintains is intended as disciplinary segregation, as opposed to B Block which is administrative

segregation, audio and video recordings of Defendant LaManna stating Plaintiff's placement in D Block is in retaliation for Plaintiff's filing legal action against Defendants. Plaintiff's Motion for Transfer seeks a court order directing Defendants to transfer Plaintiff to a correctional facility other than Southport.  Plaintiff's Motion for Injunctive Relief seeks a court order directing Plaintiff be reassigned from D Block SHU to B Block SHU at Southport, and ordering Defendants to cease interfering with Plaintiff's legal mail at Southport.

### A.     Litigation Hold

With regard to Plaintiff's Motion for Litigation Hold seeking a court order that Defendants preserve evidence of LaManna admitting Plaintiff's assignment to D Block is in retaliation for Plaintiff's commencing this action, LaManna explains that all housing at Southport is SHU, LaManna Declaration ¶ 6, and that both B Block and D Block are disciplinary SHU.  *Id.* ¶ 5.  Although all Southport housing is SHU, there are three different levels of SHU housing relating to security measures and privileges, with Level 1 being the most restrictive and Level 3 being the least restrictive.  LaManna Declaration ¶ 6.  LaManna attributes Plaintiff's November 13, 2013 transfer from Greene to Southport to Plaintiff's conviction of several disciplinary infractions, including rioting, violent conduct, creating a disturbance, interference, and being out of place, for which Plaintiff was sentenced to 12 months in SHU with loss of packages, commissary and phone, as well as 12 months loss of good time.  *Id.* ¶ 3.  According to LaManna, upon Plaintiff's arrival at Southport, Plaintiff initially was housed in B Block, but after Plaintiff made numerous complaints of harassment and retaliation by security staff, the decision was made to house Plaintiff in D Block where the presence of security cameras

with both audio and video capabilities made it possible to more closely monitor

Plaintiffs. *Id.* ¶ 5. LaManna further maintains he advised Plaintiff that should Plaintiff

exhibit good behavior, and if no problems between Plaintiff and security staff were

observed, Plaintiff would be moved to C Block,[3] which did occur on December 17, 2003.

*Id.* ¶ 7.

Preliminarily, the court observes that the evidence for which Plaintiff seeks a

court order directing Defendants to preserve, specifically, any audio and video

recordings of LaManna admitting Plaintiff was placed in D Block SHU at Southport to

retaliate against Plaintiff for exercising his First Amendment right to petition for redress

of grievances, is unrelated to the claims on which Plaintiff sues in this action, *i.e.*, that

Defendants retaliated against Plaintiff for filing an inmate grievance pursuant to DOCCS

Inmate Grievance Program, related to the confiscation of a copy of the United States

Constitution and, subsequently, planted tobacco in Plaintiff's shoe resulting in the filing

of false disciplinary charges and subsequent discipline. Accordingly, the audio and

video tapes, if they exist, are irrelevant to this action.

Furthermore, Defendants have a duty to preserve evidence that arises when "the

party has notice that the evidence is relevant to litigation – most commonly when suit

has already been filed, providing the party responsible for the destruction with express

notice, but also on occasion in other circumstances, as for example when a party should

have known that the evidence may be relevant to future litigation." *Kronisch v. United*

*States*, 150 F.3d 112, 126 (2d Cir. 1998) (citing cases). Should a party intentionally fail

to preserve evidence despite notice that such evidence is relevant to likely future

---

[3] LaManna does not explain what type of SHU is on C Block but LaManna's explanation that both B Block and D Block are disciplinary SHU, LaManna Declaration ¶ 5, implies C Block is administrative SHU.

litigation, such failure to preserve can support an inference at trial unfavorable to the responsible party. *Id*. Nevertheless, because the issue of Plaintiff's placement in D Block SHU at Southport upon his November 18, 2013 transfer to Southport is not before the court in this action, the evidence for which Plaintiff seeks a litigation hold is irrelevant. Accordingly, Plaintiff's Motion for Litigation Hold is DENIED.

### B.    Transfer

Plaintiff moves for a court order directing Defendants to transfer Plaintiff to a correctional facility other than Southport. Defendants have not responded to this motion.[4]

It is well-established that convicted persons have no constitutional right to choose the particular correctional facility in which to be housed. *Montanye v. Haymes*, 427 U.S. 236, 243 (1976) ("Under New York law, adult persons sentenced to imprisonment are not sentenced to particular institutions, but are committed to the custody of the Commissioner of Corrections."). Rather, "prison authorities have unfettered discretion to transfer prisoners from one institution to another. *Pugliese v. Nelson*, 617 F.2d 916, 922-23 (2d Cir. 1980) (unfettered transfer discretion exists despite inmate's interest in avoiding transfer to less favorable institution). As such, Plaintiff's Transfer Motion is DENIED.

### C.    Injunctive Relief

Finally, insofar as Plaintiff moves for injunctive relief directing Defendants to reassign Plaintiff from D-Block SHU to B-Block SHU at Southport, and ordering Defendants to cease interfering with Plaintiff's legal mail at Southport, such motion is

---

[4] Insofar as the docket indicates Plaintiff was transferred to Clinton Correctional Facility ("Clinton"), on September 4, 2014, a point Defendants do not address, Plaintiff's Motion to Transfer is moot.

moot.  Specifically, to justify equitable relief, including injunctive relief under

Fed.R.Civ.P. 65, Plaintiff must demonstrate his claim for which injunctive relief is sought

has a reasonable likelihood of success on the merits and that Plaintiff will suffer

irreparable harm without such injunctive relief.  *Time Warner Cable, Inc. v. DirecTV,*

*Inc.*, 497 F.3f 144, 152-53 (2d Cir. 2007).  It is, moreover, fundamental that the person

against whom equitable relief is sought be a party or a person in privity with the parties

to the underlying action.  See Fed.R.Civ.P. 65(d)(2) (injunctive relief available against

parties, officers, agents, servants, employees, and attorneys and persons in active

concert or participation with same); *Doctor's Associates, Inc. v. Reinert & Duree, P.C.*,

191 F.3d 297, 302-03 (2d Cir. 1999) (Rule 65(d)(2) prohibits court from enjoining

nonparties to federal action from prosecuting their own state court actions against same

defendant to federal action where nonparties were not alleged to have aided and

abetted defendants).

Accordingly, inasmuch as Plaintiff seeks injunctive relief against a non-party,

such relief is not available.  Fed.R.Civ.P. 65(d)(2); *Doctor's Associates, Inc.*, 191 F.3d at

302-03.   Furthermore, "[i]t is well settled in this [Second] Circuit that a transfer from a

prison facility moots an action for injunctive relief against the transferring facility."  *Prins*

*v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (citing *Young v. Coughlin*, 866 F.2d 567,

568 n. 1 (2d Cir.), *cert. denied*, 492 U.S. 909 (1989)).  *See also Day v. Chaplin*, 354

Fed.Appx. 472, 473-74 (2d Cir. Nov. 25, 2009) (affirming district court's dismissal of

inmate plaintiff's motion for injunctive relief as moot based on plaintiff's transfer from

correctional facility where plaintiff sustained the treatment against which such injunctive

relief was sought).  Accordingly, with Plaintiff's transfer from Southport to Clinton,

Plaintiff is no longer incarcerated at Southport and, as such, cannot obtain injunctive relief relative to Southport, and Plaintiff's Motion for Injunctive Relief is DISMISSED as moot.

**2.      Motion to Compel**

Plaintiff moves to compel Defendants to produce all evidence requested by Plaintiff's Discovery Demands.  Motion to Compel at 8.  In opposition, Defendants maintain they have provided responses to many of Plaintiff's Discovery Demands, but that the sheer volume of such demands requires more time to fully respond, that additional responses are forthcoming, and that AAG Sleight has done all that he, in good faith, reasonably can to provide answers such that Plaintiff's Motion to Compel should be denied in its entirety.  Defendants' Response – Motion to Compel ¶¶ 15-18. In further support of his Motion to Compel, Plaintiff points to 35 items requested in discovery Defendants have yet to produce.  Plaintiff's Reply – Motion to Compel at 14-20.  Defendants' Supplemental Discovery Responses are responsive to some of Plaintiff's outstanding Discovery Demands.  The court thus addresses each of those 35 Discovery Demands that remain outstanding as well as the sufficiency of Defendants' responses to such demands.

As stated, in his reply in further support of the Motion to Compel, Plaintiff maintains 35 of the 478 Discover Demands served on Defendants remain outstanding.[5] Plaintiff's Reply – Motion to Compel at 14-20.  Plaintiff specifically seeks an order

---

[5] The court notes that each of the 35 Discovery Requests Plaintiff maintains remains outstanding is a document request.

directing Defendants provide documents responsive to the following document

requests:

| Defendant | Document Requests Nos. |
|-----------|------------------------|
| Hetrick | 3, 18, 19, 20, 21, 22 |
| LaManna | 22 |
| Skelly | 3, 9, 12, 20, 21, 22, 23 |
| Griffin | 2, 8, 11, 15, 16, 17 |
| Hannah | 3, 8 |
| Signor | 3, 7, 20, 22, 23, 24, 25 |
| Rafferty | 3, 4, 5, 9, 19, 24 |

Nine of the above documents which Defendants had yet to produce when Plaintiff filed

his Motion to Compel on December 9, 2013, were produced by Defendants on June 12,

2014, including Document Requests Nos. 21 and 22 as to Hetrick, 21 as to Skelly, 2

and 16 as to Griffin, 8 as to Hannah, 23 as to Signor, and 4 and 19 as to Rafferty.

Defendants' Supplemental Discovery Responses at 2.  Significantly, Plaintiff has not

challenged the sufficiency of these Supplemental Discovery Responses, and the court

will not further address them, but instead addresses only the 26 remaining outstanding

Discovery Demands.

One of the remaining 26 outstanding Discovery Demands Plaintiff challenges has

been, contrary to Plaintiff's protestations, sufficiently produced.  Specifically, Plaintiff's

Document Request No. 20 as to Defendant Hetrick, seeks the production for inspection

and copying "ALL I-64 Forms that are on file at [Southport] relating to plaintiff's personal

property in the year 2012," to which Hetrick responds that notwithstanding objections,

"documents responsive to this request are produced as part of Exhibit "A" at Bates Nos. 99-100."  Defendant Hetrick's Response to Plaintiff's Request for Production of Documents ("Hetrick's Discovery Responses"),[6] Response No. 20.  A review of Exhibit "A" at Bates Nos. 99-100[7] reveals a Personal Property Transfer Form I-64 dated October 12, 2012, completed in connection with Plaintiff's transfer from Southport to Bare Hill.  Plaintiff, however, maintains Defendant Hetrick's failure to also produce the I-64 Form attached as exhibits F-1 and F-2 to the Complaint pertaining to the transfer of Plaintiff's property on July 8, 2012, establishes that other personal property transfer forms also were not produced.  Plaintiff's Reply – Motion to Compel at 14.  Such argument, however, begs the question insofar as Plaintiff does not specify any other dates in 2012 on which Plaintiff was transferred from Southport for which I-64 Personal Property Transfer forms would have been completed at Southport.  Accordingly, Plaintiff's request for any such information from Hetrick, Document Request No. 20, is DENIED.

Defendants have not sufficiently responded to two other outstanding Discovery Demands.  Specifically, Document Request No. 18 directed to Hetrick seeks "the full names of all employees that are employed at [Southport]," to which Hetrick objects asserting any responsive documents are not in his care, custody, or control, and the request is vague, overly broad and burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Hetrick's Discovery Responses, Response No. 18.  Document Request No. 3 directed to Skelly seeks "[a] Copy of DOCCS Training Manual for Correction Officers," to which Skelly objects on the bases that any

---

[6] Filed as Doc. No. 46, and as Plaintiff's Reply – Motion to Compel, Exh. C.
[7] Filed as Doc. No. 47-2.

responsive documents are not in his care, custody, or control, and the request is vague, overly broad and burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant Skelly's Response to Plaintiff's Request for Production of Documents ("Skelly Discovery Responses"),[8] Response No. 3.

With regard to Defendants' assertion that these documents are not within Defendants' care, custody, or control, Fed.R.Civ.P. 34(a)(1), as relevant, provides that discovery may be had of documents within the "responding party's "possession, custody, or control."  The concept of "control" is critical to the rule's application and is often highly fact-specific.  *New York v. National Railroad Passenger Corp.*, 233 F.R.D. 259, 268 (N.D.N.Y. 2006).  Control is defined as the legal right, authority or ability to obtain documents upon demand. *U.S. International Trade Commission v. ASAT, Inc.*, 411 F.3d 245, 254 (D.C.Cir. 2005).  "[F]ederal courts broadly construe the term control for Rule 34 purposes." *McKesson Corporation v. Islamic Republic of Iran*, 185 F.R.D. 70, 78 (D.D.C. 1999) (citing cases).  "[D]ocuments are considered to be under a party's control when the party has the right, authority, or practical ability to obtain the documents from a non-party to the action." *See Bank of New York v. Meridien BIAO Bank Tansania Ltd.*, 171 F.R.D. 135, 146 (S.D.N.Y. 1997).

In the context of a parent-subsidiary corporation relationship, the subsidiary corporation is deemed to have control of documents within the parent corporation's possession where, as relevant here, the subsidiary is the agent of the parent in the transaction giving rise to the investigation; the relationship is such that the subsidiary can secure documents of the parent to meet its own business needs and documents helpful for use in litigation; or there is access to documents when need arises in the

---

[8] Filed as Doc. No. 44, and as Plaintiff's Reply – Motion to Compel, Exh. E.

ordinary course of business.  *ASAT, Inc.*, 411 F.3d at 254 (citing *Camden Iron and Metal, Inc., v. Marubeni America*, 138 F.R.D. 438, 441-41 (D.N.J. 1991)).  The establishment of control over documents based on the existence of a principal-agent relationship between a parent and subsidiary corporation is analogous to the relationship between other parties and non-parties, including DOCCS and DOCCS employees.  *See Vigliotti v. Selky*, 2013 WL 3354423, at * 4 (W.D.N.Y. July 3, 2013) (finding defendant DOCCS employees' argument in opposition to *pro se* inmate plaintiff's request to inspect corrections facility that correctional facilities are in the possession, custody, and control of DOCCS, a non-party, without merit given that "defendants apparently had sufficient nexus to DOCCS to arrange for the inspection of [another of DOCCS's correctional facilities].").  *See also McKesson Corp.*, 185 F.R.D. at 78 ("'The control analysis for Rule 34 purposes does not require the party to have actual managerial power over the [non-party], but rather that there be a close coordination between them.'" (quoting *Afros S.P.A. v. Krauss-Maffie Corp.*, 113 F.R.D. 127, 129 (D.Del. 1986) (underlining added)).  *Cf.*, *Nat'l RR Passenger Corp.*, 233 F.R.D. at 264-65 (denying motion to compel production of documents from one state agency, the Office of State Comptroller, that was not a party to action against a separate state agency, Department of Transportation, finding sued state agency and non-party state agency were not "interrelated" where agencies did not share similar mission or goals, were situated at different spectrums of state governance as established by New York's constitution, and did not share or control each other's agenda, documents, or personnel).

Here, although DOCCS is not a party to this action, the relationship between DOCCS and Defendants, all DOCCS employees is sufficiently closely coordinated to find Defendants have practical access and control over the requested documents. Specifically, Defendants, being employees of DOCCS, are interrelated and share the same mission and goals with respect to the incarceration and rehabilitation of convicted persons committed to DOCCS's custody. *Nat'l RR Passenger Corp.*, 233 F.R.D. at 264. Moreover, the production of other documents in this action – through the intermediation of the Attorney General who represents both DOCCS and Defendants – was necessarily from DOCCS, rather than Defendants, including, *e.g.*, the Southport Cadre Handbook, Griffin Discovery Responses, Response No. 2; Defendants' Supplemental Discovery Responses Exh. E (Doc. No. 99-6), and Plaintiff's medical records, Griffin Discovery Responses, Response No. 15.  Significantly, several of Defendants' own responses to the Discovery Demands indicate a need to obtain the requested documents from DOCCS.  *See*, *e.g.*, Hetrick's Discovery Responses, Response No. 22 ("Defendants' counsel will inquire of DOCCS if documents responsive to this request [exist] and, if so, they will be produced consistent with the safety and security of the facility."), and Defendants' Supplemental Discovery Responses Exh. F (Doc. No. 99-7) (documents responsive to Document Request No. 22 as to Defendant Hetrick). *See In re NTL, Inc. Securities Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007) (citing as an example of practical ability to obtain documents from third party testimony that defendant could call third party and ask if that party had document and "if they had it, they'd send it."). As such, Defendants' responses to other of Plaintiff's Discovery Demands demonstrates a sufficiently close coordination between Defendants and their employer, DOCCS, such

that Defendants are able to obtain requested information that is within the possession,

custody and control of DOCCS either directly from DOCCS, or through Defendants'

counsel.  In sum, the court finds Defendants have the practical ability to access or

obtain requested documents from DOCCS and thus have control over such documents

sufficient to satisfy the basis for an enforceable document request pursuant to Rule

34(a).

Further, Defendants' general and conclusory objections as to relevance,

overbreadth, or burden are insufficient to avoid discovery of the requested information;

rather, the objecting party must show, specifically, how, despite broad and liberal

construction afforded federal discovery rules, each request is not relevant, or is overly

broad, burdensome, or oppressive.  *US Bank National Association v. PHL Variable*

*Insurance Co.*, 288 F.R.D. 282, 285 (S.D.N.Y. 2012) (citing Fed.R.Civ.P. 26(b)(2)(C)

and cases).  Such showing may be made by an affidavit made by a person with

knowledge of the subject matter explaining in reasonable detail the factual basis for the

objection.  *Brown v. Department of Correctional Services*, 2011 WL 2182775, at * 16

(W.D.N.Y. June 2, 2011) (citing cases).  Because Defendants have not sufficiently

explained their objections to the requested information, they must provide it to Plaintiff.

Plaintiff's Motion to Compel is thus GRANTED as to Document Request No. 18

directed to Hetrick, and Document Request No. 3 directed to Skelly.

Defendants maintain they cannot produce documents responsive to two

outstanding Discovery Demands because the requested documents do not exist,

including Document Request No. 9 directed to Skelly seeking a copy of all Use of Force

Reports Skelly filed at Southport between January 1, 2008, and July 28, 2012, and

Document Request No. 3 directed to Rafferty seeking a copy of the video recording of Skelly speaking with Rafferty on July 16, 2012, in the B-Block administrative disciplinary hearing room at Southport, prior to Plaintiff's entrance into the room between 9:00 A.M. and 10:00 A.M. Defendants objects to both requests asserting the requested information does not exist.  Skelly Discovery Responses, Response No. 9; Defendant Rafferty's Response to Plaintiff's Request for Production of Documents ("Rafferty Discovery Responses"),[9] Response No. 3.

An attorney's statement in response to discovery that the requested document does not exist is sufficient to avoid producing the document.  *See United States v. First National City Bank*, 396 F.2d 897, 900 n. 8 (2d Cir. 1968) (noting defendant failed to present a legal sufficient reason for not complying with subpoena by failing to indicate subpoenaed documents did not exist); *V.D.B. Pacific B.V. v. Chassman*, 277 F.R.D. 121, 124 (S.D.N.Y. 2011) (sanctioning plaintiff for wasting both counsel and court's time by failing to inform that most of the documents requested by defendant did not exist); *Breedlove v. Mandell*, 2008 WL 596864, at * 2 (W.D.N.Y. Feb. 29, 2008) (denying motion to compel based on requested party's representation that it had no record of requested document, and in the absence of any reason to doubt such representation, because "[c]ourt cannot compel production of what does not exist." (quoting *American Banana Co., Inc., v. Republic National Bank of New York, N.A.*, 2000 WL 521341, at * 3 (S.D.N.Y. May 1 2000))).  Although Plaintiff characterizes Defendants' response that the requested Use of Force Reports filed by Skelly between January 1, 2008, and July 28, 2012, do not exist as a lie because "Skelly beat up more inmates than all the officers here at Southport," Motion to Compel at 15, such assertion does not call into question

---

[9] Filed as Doc. No. 73, and as Plaintiff's Reply – Motion to Compel, Exh. I.

Defendants' statement in responding to the request that "DOCCS has advised Defendant's counsel that it does not maintain Use of Force Reports sorted by the security staff or by subject matter."  Skelly Discovery Responses, Response No. 9. Insofar as Plaintiff also maintains Defendants' response that the requested video recording made of Skelly and Rafferty on July 16, 2012, is false because "previous interrogatories and admissions state that cameras and recording in B-Block's 'Common Area'" which is the location of Plaintiff's request, were recording, Motion to Compel at 19, is inconsistent with Plaintiff's demand of the video recording from the administrative hearing room on B-Block.

As such, Plaintiff's Motion to Compel is DENIED as to Document Request No. 9 directed to Skelly, and Document Request No. 3 directed to Rafferty.

Defendants responded to Plaintiff's request for the "entire medical/mental health" record on file at Southport by asserting Plaintiff has already been provided with a complete copy of his medical file, and Plaintiff's mental health records would be forwarded to Plaintiff after Plaintiff executes and returns an authorization for the release of mental health records, which Defendants would forward to Plaintiff.  Defendant Griffin's Response to Plaintiff's Request for Production of Documents ("Griffin Discovery Responses"),[10] Response No. 15.  Plaintiff interprets this response as a claim by counsel "to produce later."  Motion to Compel at 17 (underlining in original").

Insofar as Defendants have already provided Plaintiff with his medical records, the Motion to Compel is DISMISSED as moot.  With regard to Plaintiff's request for his mental health records, Plaintiff does not dispute such executed release is necessary for Defendants to retrieve Plaintiff's mental health records, nor argue that the release for

---

[10] Filed as Doc. No. 71, and as Plaintiff's Reply – Motion to Compel, Exh. F.

such records was never forwarded by Defendants, nor assert that Plaintiff executed and returned the release, but has yet to receive such records.  In the absence of any such argument, Plaintiff's Motion to Compel also is DISMISSED as moot with regard to the request for his mental health records.  Plaintiff's Motion to Compel therefore is DISMISSED as moot as to Document Request No. 15 directed to Griffin.

With regard to Plaintiff's remaining 20 outstanding Discovery Demands, Defendants provide the same response, specifically, that "Defendants' counsel will also make inquiry of DOCS and if additional responses to this request exist, copies will be produced consistent with the safety and security of the facility."  Hetrick Discovery Responses, Response Nos. 3, and 10; Defendant LaManna's Response to Plaintiff's Request for Production of Documents ("LaManna Discovery Responses"),[11] Response No. 22; Skelly Discovery Responses, Response Nos. 12, 20, 22, and 23; Griffin Discovery Responses, Response Nos. 8, 11, and 17; Defendant Hannah's Response to Plaintiff's Request for Production of Documents ("Hannah Discovery Responses"),[12] Response No. 3, Defendant Signor's Response to Plaintiff's Request for Production of Documents ("Signor Discovery Responses"),[13] Response Nos. 3, 7, 20, 22, 24, and 25, and Rafferty Discovery Responses, Response Nos. 5, 9, and 24.  The record, including Defendants' Supplement Discovery Responses, filed June 12, 2014, does not indicate that Defendants produced any more documents responsive to these requests, nor that Defendants, upon making further inquiry to DOCCS regarding the requested documents, were unable to locate or obtain the documents so as to produce them to Plaintiff.

---

[11] Filed as Doc. No. 43, and as Plaintiff's Reply – Motion to Compel, Exh. D.
[12] Filed as Doc. No. 35, and as Plaintiff's Reply – Motion to Compel, Exh. G.
[13] Filed as Doc. No. 74, and as Plaintiff's Reply – Motion to Compel, Exh. H.

Inasmuch as Defendants assert a lack of knowledge as to whether the documents Plaintiff requests in the remaining 20 Discovery Demands exist and what impact their production would have on the correctional facility's safety and security, a party's lack of knowledge is a reasonable response to a discovery request provided the response is based on good faith. *Kenneth v. Nationwide Mutual Fire Insurance Co.*, 2007 WL 3533887, at * 15 (W.D.N.Y. Nov. 13, 2007). Here, there is no basis on which to find Defendants purposefully or willfully failed to provide the requested documents. Nevertheless, Defendants must, **within 45 days**, provide a declaration from someone with personal knowledge detailing the steps taken to obtain the requested information, and why such steps were unsuccessful. As to this request, Plaintiff's motion is DENIED without prejudice should Defendants fail to provide the declaration **WITHIN 45 DAYS**.

Plaintiff also seeks a court order imposing sanctions on Defendants for failing to file responses to the instant motions filed by Plaintiff, including the Motion to Compel, the Motion for Transfer, and Motion for Litigation Hold. Motion to Compel at 2-6. Defendants, however, were not required to file papers responsive to Plaintiff's motions; rather, Defendants could choose not to file any response and run the risk that Plaintiff's papers, alone, would demonstrate Plaintiff's entitlement to the requested relied. *See Balastriere PLLC v. CMA Trading, Inc.*, 2014 WL 929813, at * (S.D.N.Y. Mar. 7, 2014) (non-moving party not required to file response to motion to rebut an insufficient showing of entitlement to requested relief). Accordingly, this aspect of Plaintiff's Motion to Compel is DENIED.

Finally, insofar as Plaintiff protests that many of the discovery responses produced by Defendants are duplicative such that AAG Sleight's assertions that it was

difficult to provide timely responses to the number of Plaintiff's Discovery Demands are false, Motion to Compel at 9-13, Plaintiff does not assert that such responses, despite being duplicative, were insufficient.  Nor does the fact that the same documents were responsive to more than one Discovery Demand require a finding that the documents should have been provided sooner.  Defendants were still required to read each of the Discovery Demands, and then research what documents were responsive to each request.  Accordingly, this argument provides no basis for sanctioning Defendants for failure to comply with discovery.

## **CONCLUSION**

Based on the following, Plaintiff's Motion for Litigation Hold (Doc. No. 32) is DENIED; Plaintiff's Motion for a Transfer (Doc. No. 33) is DENIED; Plaintiff's Motion to Compel (Doc. No. 41) is GRANTED in part, DENIED in part, and DISMISSED as moot in part; Plaintiff's Motion for Injunctive Relief (Doc. No. 69) is DISMISSED as moot. SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      September 11, 2014
               Buffalo, New York

PLAINTIFF IS ADVISED THAT ANY APPEAL OF THIS DECISION AND ORDER MUST BE TAKEN BY FILING WRITTEN OBJECTION WITH THE CLERK OF COURT **NOT LATER THAN 14 DAYS** AFTER SERVICE OF THIS DECISION AND ORDER AND IN ACCORDANCE WITH FED.R.CIV.P. 72(a).