UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PATRICK GUILLORY,

                              Plaintiff,

               v.

CRAIG SKELLY, SGT. THOMAS HANNAH,
OFFICER JOHN RAFFERTY, DSS JAMIE
LAMANNA, SUPERINTENDENT THOMAS
GRIFFIN, CAPTAIN KEVIN SIGNOR, and
CAPTAIN HARRY HETRICK,

                              Defendants.
_____

                                              REPORT
                                              and
                                      RECOMMENDATION

                                              12-CV-00847S(F)

APPEARANCES:        PATRICK GUILLORY, *Pro Se*
                             09-B-0714
                             Clinton Correctional Facility
                             Box 2001
                             Dannemora, New York  12929

                             ERIC T. SCHNEIDERMAN
                             NEW YORK STATE ATTORNEY GENERAL
                             Attorney for Defendants
                             MICHAEL J. RUSSO, and
                             DAVID J. SLEIGHT,
                             Assistant Attorneys General, of Counsel
                             Main Place Tower
                             Suite 300A
                             350 Main Street
                             Buffalo, New York 14202

## JURISDICTION

     This case was referred to the undersigned by Honorable William M. Skretny on

September 10, 2014, for all pretrial motions. The matter is presently before the court on

Defendants' motion for summary judgment filed September 4, 2014 (Doc. No. 106).

## BACKGROUND

Plaintiff Patrick Guillory ("Plaintiff" or "Guillory"), proceeding *pro se*, commenced this civil rights action on September 5, 2012, while incarcerated in the custody of New York Department of Corrections and Community Supervision ("DOCCS"), alleging Defendants, all DOCCS employees, violated Plaintiff's rights under the First, Eighth and Fourteenth Amendments by retaliating against Plaintiff for filing a harassment complaint against a correctional officer by framing Plaintiff with possession of contraband and smuggling, filing a false misbehavior report against Plaintiff in connection with the framed prison disciplinary charges, depriving Plaintiff of procedural due process in connection with the subsequent disciplinary hearing on the charges, and physically assaulting Plaintiff. Defendants to this action include Corrections Officer Craig Skelly ("Skelly"), Corrections Sergeant Thomas Hannah ("Hannah"), Corrections Officer John Rafferty ("Rafferty"), Deputy Superintendent of Security Jamie LaManna ("LaManna"), Southport Superintendent Thomas Griffin ("Griffin"), Corrections Captain Kevin Signor ("Signor"), and Corrections Captain Henry Hetrick ("Hetrick") (together, "Defendants"). On March 12, 2013, Defendants' answer (Doc. No. 18) was filed.

On September 5, 2014, Defendants filed a motion for summary judgment (Doc. No. 106) ("Defendants' Motion"), and supporting papers including a Statement of Undisputed Facts (Doc. No. 107) ("Defendants' Statement of Facts"), attaching exhibits A through F ("Defendants' Exh(s). __"), the Declaration of Craig Skelly (Doc. No. 108) ("Skelly Declaration"), the Declaration of Jamie LaManna (Doc. No. 109) ("LaManna Declaration"), the Declaration of Harry Hetrick (Doc. No. 110) ("Hetrick Declaration"), the Declaration of Thomas Hannah (Doc. No. 111) ("Hannah Declaration"), and the

Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Doc. No. 112) ("Defendants' Memorandum").  In opposition to Defendants' Motion, Plaintiff filed on December 29, 2014, Plaintiff's Response to Defendants' Rule 7.1 and 56.1 Statement of Undisputed Facts (Doc. No. 141) ("Plaintiff's Statement of Facts"), a manually filed volume of exhibits A through Z-28 (Doc. No. 142) ("Plaintiff's Exh(s). __"), Plaintiff's Affidavit in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 143) ("Plaintiff's Affidavit"), and Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 144) ("Plaintiff's Response").  On February 3, 2015, Defendants filed the Declaration of Assistant Attorney General David J. Sleight (Doc. No. 152) ("Sleight Reply Declaration"), the Declaration of Brian Cullen (Doc. No. 153) ("Cullen Reply Declaration"), the Declaration of Thomas Hannah (Doc. No. 154) ("Hannah Reply Declaration"), the Declaration of Craig Skelly (Doc. No. 155) ("Skelly Reply Declaration"), and the Memorandum of Law in Further Support Of Summary Judgment (Doc. No. 156) (Defendant's Reply").  On February 4, 2015, Defendants filed the Amended Memorandum of Law in Further Support of Summary Judgment (Doc. No. 157) ("Defendants' Amended Reply").[1]  With the court's permission, Plaintiff filed on March 16, 2015 a Sur-Reply (Doc. No. 164) ("Plaintiff's Sur-Reply"). Oral argument was deemed unnecessary.

Based on the following, Defendant's Motion should be GRANTED in part and DENIED in part.

---

[1] The Amended Reply is essentially identical to Defendants' Reply except for footnote 3 which, in the Amended Reply, lists additional cases in which Plaintiff alleges retaliation.

# FACTS[2]

At all times relevant to this action, Plaintiff Patrick Guillory ("Plaintiff" or "Guillory"), was incarcerated at Southport Correctional Facility ("Southport" or "the correctional facility"). Southport, a maximum security prison, serves as an all Special Housing Unit ("SHU") facility, with all inmates housed in disciplinary SHU housing at one of three levels. Upon entering Southport, all inmates are assigned to Level 1 which has the most strict security measures and least privileges. If an inmate exhibits good behavior for 30 days at Level 1, he is eligible to move to Level 2 with reduced security measures and more privileges, or Level 3 with the least restrictive security measures and the most privileges. Plaintiff, however, was not a disciplinary SHU inmate but, rather, was a "Cadre Worker" meaning Plaintiff had been selected, based on a good disciplinary records and having completed required programming, to perform routine facility maintenance and food service operations at the correctional facility. Cadre Workers also have broader access to areas of the facility than the other SHU inmates and, thus, DOCCS officials place more trust and responsibility in the Cadre Workers than in other Southport inmates. Cadre Workers at Southport are housed in E-Block.

On July 5, 2012, Plaintiff filed a complaint ("July 5, 2012 Complaint"),[3] with Southport's Corrections Captain's Office alleging that earlier that day, upon returning to his housing unit after exiting C-Block, Corrections Officer Murphy ("Murphy"),[4] confiscated from Plaintiff personal property, to wit, a copy of the United States Constitution Plaintiff had torn out of a book used by Plaintiff in connection with a paralegal course for which Plaintiff's parents had paid $ 750. On June 6, 2012, Plaintiff,

---

[2] Taken from the pleadings and motion papers filed in this action.
[3] Plaintiff's Exh. I.
[4] Plaintiff has not sued Murphy in this action.

along with five or six other Cadre Workers, while on their way from E-Block to the messhall for chow, were subjected to a routine pat frisk performed by Defendant Skelly and other corrections officers at the Gate 13 entrance to the messhall ("Gate 13"). Plaintiff alleges that during the pat frisk, Skelly ordered all the Cadre Workers except Plaintiff to remove their shoes and boots. When Skelly searched Plaintiff, who had not removed his boots, Skelly purportedly found inside the cuff of Plaintiff's right boot a quantity of tobacco in the finger of a rubber "feed-up" glove which Plaintiff maintains Skelly planted to retaliate against Plaintiff for filing the July 5, 2012 Complaint against Murphy. Plaintiff protested that the tobacco was not his, that he did not smoke or use drugs, and that he had not in his seven years of incarceration been charged with violating any DOCCS disciplinary rules.

Plaintiff was taken by Skelly and Hannah to Southport's Draft Room where he was advised that the "ball" found in his boot was tobacco and not drugs and allegedly told by Skelly that the disciplinary incident was in response to Plaintiff's filing the Complaint against Murphy for confiscating Plaintiff's copy of the Constitution. According to Plaintiff, had the tobacco actually been found in his boot, rather than planted, it would have been flattened rather than ball-shaped. Plaintiff was then placed in an SHU cell on B-Block and charged in an Inmate Misbehavior Report ("Misbehavior Report"), issued by Skelly and endorsed by Hannah, with smuggling in violation of Rule 114.10 and possessing contraband in violation of Rule 113.22. Plaintiff was also issued a Deprivation Order because of the nature of the charged offenses and because Plaintiff was disruptive on the gallery. Specifically, Plaintiff was deprived of out-of-cell exercise,

showers, hair-cuts, and cell clean-up.  On July 11, 2012, Plaintiff's cell clean-up privileges were restored.

Defendant Hearing Officer Rafferty presided over the Tier III disciplinary hearing ("Disciplinary Hearing") on the Misbehavior Report which commenced on July 12, 2012, and concluded on July 16, 2012.  Plaintiff requested as evidence for the Disciplinary Hearing video from the Gate 13 cameras which Plaintiff maintains would show that during the July 6, 2012 pat frisk, Skelly framed Plaintiff by planting the tobacco on him.  Rafferty, however, advised Plaintiff that the video Plaintiff requested did not exist.  Hearing Tr.[5] at 000795.  At the Disciplinary Hearing's conclusion, Plaintiff was found guilty on both charged violations and sentenced to six month of SHU, six months loss of good time, and confiscation of the contraband, *i.e.*, the tobacco found in Plaintiff's boot.  Plaintiff maintains that while handcuffed with his hands behind him and being escorted back to his SHU cell after the Disciplinary Hearing, he was assaulted and threatened by Skelly who choked him and Hannah who punched Plaintiff in the left ear ("July 16, 2012 assault").  According to Plaintiff, he was warned by Hannah to dismiss the legal proceedings against Defendants or Plaintiff would next be framed for possession and smuggling drugs or weapons.

On July 17, 2012, Plaintiff's shower privileges were restored.  On July 18, 2012, Defendant Griffin, after reviewing the hearing tapes and evidence, upheld Plaintiff's conviction on the disciplinary rule infractions.  On July 28, 2012, Plaintiff's haircut privileges were restored.  On August 3, 2012, Plaintiff's out-of-cell exercise privileges were restored when Plaintiff was transferred from Southport to Green Correctional

---

[5] References to "Hearing Tr. __" are to the Bates No. of the Disciplinary Hearing transcript, filed as Plaintiff's Exh. R, and Defendants' Exh. D.

Facility to be deposed in an unrelated pending lawsuit.  On August 23, 2012, Plaintiff

filed an inmate grievance ("August 23, 2012 Grievance")[6] regarding the alleged July 16,

2012 assault by Hannah and Skelly.

On September 12, 2012, Plaintiff filed an Inmate Grievance ("September 12,

2012 Grievance"),[7] alleging Defendants had tampered with the Deprivation Orders.  On

September 17, 2012, Special Housing/Inmate Discipline Director Albert Prack ("Prack"),

reviewed Plaintiff's guilty disposition on the Misbehavior Report and modified the

Disciplinary Hearing because the misbehavior did not warrant the imposed penalty.

Accordingly, the penalty was reduced to three months in SHU from six months, the

confiscation of the contraband was confirmed, but without any loss of good time.


## DISCUSSION

### 1.    Summary Judgment

Summary judgment of a claim or defense will be granted when a moving party

demonstrates that there are no genuine issues as to any material fact and that a moving

party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex

Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir.

2003).  The court is required to construe the evidence in the light most favorable to the

non-moving party.  *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).  The party

moving for summary judgment bears the burden of establishing the nonexistence of any

genuine issue of material fact and if there is any evidence in the record based upon any

---

[6] Defendants' Exh. E.
[7] Defendants' Exh. F.

source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  "A fact is material if it 'might affect the outcome of the suit under governing law.'"  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions."  *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)).  A defendant is entitled to summary judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on'" an essential element of a claim on which the plaintiff bears the burden of proof.  *In re Omnicom Group, Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)).  Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).  "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."  *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

Plaintiff's claims seeks damages for alleged violations of his constitutional rights pursuant to 42 U.S.C. § 1983 ("§ 1983"), which imposes civil liability upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws of the United States.  Section 1983, however, does not itself provide a source of substantive rights, but instead provides the mechanism by which a plaintiff may seek vindication of federal rights conferred elsewhere.  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  Here, Plaintiff's claims alleging he was subjected to a false misbehavior report in retaliation for filing a grievance complaining about Murphy allegedly confiscating Plaintiff's copy of the Constitution, the denial of due process at the subsequent Tier III disciplinary hearing held on the misbehavior report, and the asserted physical assault by Defendants Hannah and Skelly while escorting Plaintiff back to his cell after the disciplinary hearing assert claims in violation of the First, Eighth, and Fourteenth Amendments.

Defendants argue in support of summary judgment that Plaintiff's excessive force claim does not rise to a constitutional level, Defendants' Memorandum at 3-7, Defendant Griffin lacks the requisite personal involvement necessary to support a claim against him, *id*. at 7-9, Plaintiff's allegations of retaliatory conduct fail to state a constitutional violation because there is no evidence any Defendants were aware Plaintiff had filed a grievance complaining about Murphy, *id*. at 9-11, the deprivation orders issued as to Plaintiff did not result in any constitutional violation, *id*. at 11-13, and Plaintiff failed to exhaust his administrative remedies as to his retaliation and deprivation order claims, *id*. at 13-16.  In opposition to summary judgment, Plaintiff maintains Defendants misconstrue caselaw in arguing for summary judgment of Plaintiff's

excessive force claim, Plaintiff's Response at 2-13, that Defendant Griffin was personally involved in the alleged constitutional deprivations by affirming the guilty disposition of the Tier III disciplinary hearing held with regard to the alleged false misbehavior report, *id.* at 14-17, that evidence in the record establishes Defendants were aware Plaintiff had filed a grievance against Murphy, *id.* at 17-20, that the deprivation orders violated Plaintiff's constitutional rights is established by the fact that the disciplinary violation of which Plaintiff was found guilty in the Misbehavior Report, *i.e.*, possession and smuggling tobacco, was not considered a serious offense, *id.* at 20-24,  and Plaintiff exhausted available administrative remedies prior to commencing the instant action, *id.* at 24-25.  In further support of summary judgment, Defendants argue the injury Plaintiff allegedly sustained as a result of the physical force Defendants Hannah and Skelly used against him establishes any use of force was *de minimis* and thus insufficient to support an Eighth Amendment claim, Defendants' Reply at 2-4, nothing in the record establishes the requisite causal connection to support Plaintiff's retaliation claim, *id.* at 4-5, and Plaintiff's reliance on a letter received from the court's *pro se* staff attorney did not relieve Plaintiff of his obligation to exhaust administrative remedies, *id.* at 5-6.  In further opposition to summary judgment Plaintiff asserts that Defendants failed to produce Plaintiff's medical records detailing the serious nature of his injuries to support his Eighth Amendment claim, Plaintiff's Sur-Reply at 2-4, that the deposition transcripts establish a causal connection supporting his retaliation claim, *id.* at 5-6, and that the record establishes Plaintiff exhausted his administrative remedies, *id.* at 6-8.

2.      **Exhaustion of Administrative Remedies**

Preliminarily, the court addresses Defendants' argument in support of summary

judgment that Plaintiff did not exhaust available administrative remedies with regard to

Plaintiff's retaliation and deprivation order claims.  Defendants' Memorandum at 13-16.

In particular, Defendants maintain that although Plaintiff did file an inmate grievance

regarding the alleged July 16, 2012 assault by Hannah and Skelly, the grievance in

silent as to any allegation that the assault was intended as retaliation for Plaintiff's July

5, 2012 Complaint regarding Murphy.  *Id.* at 15.  Defendants further maintain that

Plaintiff fails to set forth in the August 23, 2012 Grievance any allegations that Hannah

and Skelly assaulted Plaintiff in retaliation for the July 5, 2012 Complaint regarding

Murphy.  *Id.*  In opposition, Plaintiff maintains he received an order from Judge Telesca

advising Plaintiff did not need to exhaust administrative remedies if Plaintiff believed his

life was in danger.  Plaintiff's Response at 24-25 (citing Plaintiff's Exh. Z-24).   In further

support of summary judgment, Defendants maintain that the order to which Plaintiff

cites in support of summary judgment is actually a letter from this court's Pro Se Staff

Attorney advising Plaintiff that he would not be precluded from filing an action without

first pursuing administrative remedies.  Defendants' Reply at 6.  In his Sur-Reply,

Plaintiff does not argue in further opposition to summary judgment on this claim.

Pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), "[n]o

action shall be brought with respect to prison conditions under section 1983 of this title,

or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted."  "Accordingly,

the PLRA does not require the exhaustion of all administrative remedies, but only those

that are 'available' to the inmate." *Hubbs v. Suffolk County Sheriff's Dept.*, ___ F.3d ___,

2015 WL 3461791, at * 3 (2d Cir. June 2, 2015). "'To be 'available' under the PLRA, a

remedy must afford 'the possibility of some relief for the action complained of.'" *Id.*

(quoting *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004)). "Whether an

administrative remedy was available to a prisoner in a particular prison or prison system

is ultimately a question of law, even when it contains factual elements." *Id.* at * 4 (citing

*Snider v. Melindez*, 199 F.3d 108, 114 (2d Cir. 1999)). Further, "[b]ecause failure to

exhaust is an affirmative defense, defendants bear the initial burden of establishing, by

pointing to 'legally sufficient source[s]' such as statutes, regulations, or grievance

procedures, that a grievance process exists and applies to the underlying dispute." *Id.*

(quoting *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004), and citing *Mojias v.

Johnson*, 351 F.2d 606, 610 (2d Cir. 2003), and *Snider*, 199 F.3d at 114). Should

defendants meet this initial burden, "administrative remedies may nonetheless be

deemed unavailable if the plaintiff can demonstrate that other factors – for example,

threats from corrections officers – rendered a nominally available procedure unavailable

as a matter of fact." *Id.* (citing *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 1994)).

With regard to the availability of administrative remedies, Defendants explain the

three-tiered grievance process available under DOCCS regulations, specifically 7

NYCRR § 701.5. Defendants' Memorandum at 15. According to Defendants, an

inmate is required to file a grievance within 21 days of an alleged incident, *id.* (citing 7

NYCRR § 701.5(a)(1)), after which the Inmate Grievance Review Committee ("IGRC"),

has 16 days to informally resolve. *Id.* (citing 7 NYCRR § 701.5(b)(1)-(4)). An inmate

who disagrees with the IGRC's determination has seven days after receipt of the

IGRC's written determination to file an appeal with the correctional facility's superintendent. *Id.* (citing 7 NYCRR § 701.5(c)(1)). If upon receipt of the superintendent's written decision the inmate remains dissatisfied, he has seven days to appeal to the Central Office Review Committee ("CORC"). *Id.* (citing 7 NYCRR § 701.5(c)(1). CORC then has 30 days in which to issue a written decision. *Id.* (citing 7 NYCRR § 701.5(c)(2)). Defendants have thus met their burden of establishing the existence of a grievance procedure and the burden thus shifts to Plaintiff to demonstrate factors rendering such grievance procedure unavailable to him.

A review of the "order" Plaintiff references in opposition to Defendants' argument establishes that by letter dated August 3, 2012 ("August 3, 2012 Letter"),[8] Betsy Sterling ("Sterling"), a *Pro Se* Staff Attorney for the Western District of New York, responded to a letter Plaintiff wrote to Judge Telesca and which Judge Telesca referred to Sterling for a response.[9] According to the August 3, 2012 Letter, Plaintiff had sought from Judge Telesca permission to file, without first filing an inmate grievance, a complaint in this court alleging civil rights violations. August 3, 2012 Letter. Plaintiff explained that his circumstances did not allow him to file an inmate grievance. *Id.* Sterling advised Plaintiff that

> If you wish to file a § 1983 complaint with the Court, you may do so. Issues related to exhaustion of remedies may be addressed after the complaint has been filed but will not prevent you from filing a complaint.
>
> I regret that the Court cannot provide you with legal advice regarding exhaustion of administrative remedies.

*Id.*

---

[8] Plaintiff's Exh. Z-24 at Bates No. 000559.
[9] A copy of Plaintiff's letter to Judge Telesca is not in the record.

A plain reading of the August 3, 2012 Letter thus establishes, contrary to Plaintiff's understanding, it is not an order from Judge Telesca dispensing with Plaintiff's need to exhaust administrative remedies as to any of his claims; rather, the letter correctly explains that any issue regarding failure to exhaust would be addressed after Plaintiff filed his complaint.  Nevertheless, the record does contain copies of letters from Plaintiff regarding both his retaliation claim based on the July 6, 2012 Misbehavior Report and the July 16, 2012 assault, as well as the deprivation orders to which Plaintiff was subjected following the issuance of the July 6, 2012 Misbehavior Report, and which letters were considered as grievances.

In particular, on July 16, 2012, Plaintiff wrote a letter to Defendant Griffin ("First July 16, 2012 Letter"),[10] then Southport's Superintendent, complaining that while being transported from the Disciplinary Hearing to his cell, he was physically assaulted by Skelly, who choked Plaintiff, and by Hannah who punched Plaintiff's left ear.  First July 16, 2012 Letter at 1-2.  According to Plaintiff, Skelly then instructed Plaintiff to drop his lawsuits against the State or Plaintiff would again be set-up for a disciplinary rules violation by planting drugs or weapons in Plaintiff's cell and subjecting Plaintiff to further assaults which would be reported as assaults by Plaintiff.  *Id.* at 2.  Plaintiff demanded an investigation of the alleged assault.  *Id.*  The July 12, 2012 Letter bears a date stamp indicating it received in Southport's Inmate Grievance office on August 23, 2012.  *Id.* at 1.  Plaintiff wrote another letter on July 16, 2012, regarding the alleged assault ("Second July 16, 2012 Letter"),[11] to the Office of the Inspector General, in which Plaintiff states "I could file a grievance but I filed a complaint on July 5, 2012 to the Captain's Office

---

[10] Plaintiff's Exh. Z-4.
[11] Plaintiff's Exh. Z-5.

regarding C/O Murphy confiscating my U.S. Constitution.  On July 6, 2012 (the next day) C/O Skelly was captured on camera @ 13 Gate entrance . . . setting me up with tobacco!" *Id.* at 2-3.  Although this statement could reasonably be construed as indicating Plaintiff was not filing a grievance, the Second July 16, 2012 Letter was also forwarded to Southport's Inmate Grievance office. *See id.* at 1 (date stamp indicating Southport's Inmate Grievance Office received Second July 16, 2012 Letter on August 23, 2012).  On August 17, 2012, Plaintiff wrote a letter to the Office of Mental Health ("August 17, 2012 Letter"),[12] which also bears a date stamp indicating it was received by Southport's Inmate Grievance office on August 23, 2012.  August 17, 2012 Letter at 1. In the August 17, 2012 Letter, Plaintiff complains about the July 6, 2012 incident in which he allegedly was set-up with violating prison regulations, charged in a false misbehavior report, and then assaulted in retaliation for filing complaints against DOCCS officials and employees.  Furthermore, Plaintiff filed on August 7, 2012, after being transferred to Greene Correctional Facility ("Greene"), an inmate grievance,[13] regarding his allegations against Defendants Hannah and Skelly on July 6 and 16, 2012, bearing a date stamp indicating it was received by Southport's Inmate Grievance office on August 23, 2012, and accompanied by a Grievance Receipt Notification Form issued by Southport Correctional Facility's Inmate Grievance Program, consolidating Plaintiff's complaints regarding the July 6, 2012 incident and the July 16, 2012 into a single grievance, Grievance # SPT-54486-12 ("Inmate Grievance").  The Inmate Grievance was investigated and on September 10, 2012, was denied by Defendant Superintendent LaManna.  Superintendent's Determination, Plaintiff's Exh. Z-10 at

---

[12] Plaintiff's Exh. Z-8.
[13] Plaintiff's Exh. Z-9                .

Bates No. 000599.[14]  Plaintiff appealed the Superintendent's Determination on

September 13, 2013.  *Id.*[15]

Accordingly, the record establishes Plaintiff did exhaust available administrative

remedies as to his retaliation and deprivation order claims.  Defendants' Motion seeking

summary judgment on Plaintiff's claims for retaliation and deprivation orders for failure

to exhaust administrative remedies should be DENIED.

 3.    **First Amendment Retaliation Claim**

Plaintiff alleges that he was framed by Skelly's July 6, 2012 discovery of tobacco

in Plaintiff's boot cuff in retaliation for Plaintiff's filing the July 5, 2012 Complaint against

Murphy.  Complaint ¶¶ 6-7.  Defendants argue in support of summary judgment that the

only copy of the July 5, 2012 Complaint in the record was produced by Plaintiff during

discovery, such that the timing of its production calls into question its authenticity.

Defendants' Memorandum at 10-11.  Defendants also rely on statements by Defendants

Hetrick, Skelly and Hannah denying any knowledge of the July 5, 2012 Complaint, as

well as statements in the July 5, 2012 Complaint advising the reader is on notice that

Plaintiff would not tolerate any retaliation as a result of its filing.  *Id.* at 11.  In opposition

to summary judgment on the retaliation claim, Plaintiff points to a statement by Assistant

New York Attorney General David J. Sleight ("Sleight"), made in opposition to Plaintiff's

October 1, 2014 motion for sanctions (Doc. No. 124), admitting he was mistaken that

the only copy Plaintiff had of the July 5, 2012 Complaint was the one Plaintiff produced

---

[14] Although no copy of Southport's IGRC's initial determination on the Inmate Grievance is in the record, that a Superintendent's Determination was issued strongly implies it was issued after Plaintiff appealed an unfavorable IGRC Determination.

[15] No copy of CORC's Determination of Plaintiff's appeal of the Superintendent's Determination is in the record, although that Plaintiff filed the instant action strongly implies such determination was unfavorable to Plaintiff.

in discovery and that DOCCS did have a copy of it prior to this action.  Plaintiff's

Response at 17-18 (citing Plaintiff's Exh. N at ¶¶ 9-10).   In further support of summary

judgment, Defendants argue that regardless of whether Plaintiff filed the July 5, 2012

Complaint, Defendants Hannah and Skelly both deny any knowledge of such complaint

on July 6, 2012, or of the earlier June 25, 2012 Letter from Plaintiff complaining about

Murphy.  Defendants' Reply at 5; Hannah Declaration ¶¶ 2-3; Skelly Declaration ¶¶ 2-3.

In further opposition to summary judgment, Plaintiff asserts that both Hannah and Skelly

had copies of the July 5, 2012 Complaint when they framed Plaintiff on July 6, 2012.

Plaintiff's Sur-Reply at 5.

The Second Circuit has recognized that a retaliation claim may be dismissed on

summary judgment where the only individuals named in an inmate's internal complaint

pertained to others who were not alleged to have participated in the event of which the

inmate plaintiff complained.  *Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009) (granting

summary judgment dismissing inmate's retaliation claim for which only basis for causal

connection was letter written by inmate plaintiff complaining about actions taken by a

corrections officer other than the named defendants).   Similarly, in the instant case,

Plaintiff's July 5, 2012 Complaint is directed only against Murphy whom Plaintiff

maintains confiscated from Plaintiff a copy of the United States Constitution that was

Plaintiff's personal property, having been torn from Plaintiff's paralegal coursebook.

July 5, 2012 Complaint at Bates No. 000079.  Plaintiff's retaliation claim, however, is

asserted against only Defendants Hannah and Skelly, who are not mentioned in the

July 5, 2012 Complaint.[16]  Accordingly, Defendants' Motion should be GRANTED as to

Plaintiff's First Amendment retaliation claim.

**4.      Eighth Amendment – Excessive Force**

Plaintiff claims his Eighth Amendment rights were violated when Defendants

Hannah and Skelly subjected him to excessive force by assaulting Plaintiff while

escorting Plaintiff from the Disciplinary Hearing on July 16, 2012.  In support of

summary judgment, Defendants maintain the record is devoid of any evidence that

Plaintiff was subjected to any excessive force on July 16, 2012, Defendants'

Memorandum at 3-5, and the injuries Plaintiff allegedly sustained as a result of the

claimed July 16, 2012 assault were too *de minimis* to support his excessive force claim,

*id.* at 5-7.  In opposition to summary judgment, Plaintiff argues that the alleged assault

was completely unprovoked, such that any use of force was excessive even in the

absence of any injury.  Plaintiff's Response at 5-6.  In further support of summary

judgment, Defendants reiterate that the injuries claimed were *de minimis* and, thus, do

not support an excessive force claim, and the record fails to reveal that Plaintiff

complained of any injury following the alleged assault.  Defendants' Reply at 2-4.  In

further opposition to summary judgment, Plaintiff asserts that the extent and

seriousness of his injuries is "a matter of record" and that Defendants have failed to

produce Plaintiff's medical records from Greene in which Plaintiff's injuries are

documented.  Plaintiff's Sur-Reply at 2.

---

[16] Nor is either Hannah or Skelly mentioned in Plaintiff's earlier complaint made on June 25, 2012 (Plaintiff's Exh. D), against an unidentified corrections officer, later determined to be Murphy, and which Plaintiff asserts was the true motivation for the July 6, 2012 incident.  Plaintiff's Statement of Facts ¶ 14; Plaintiff's Affidavit ¶ 5.

"In the context of a claim by a prisoner that he was subjected to excessive force by prison employees, the source of the ban against such force is the Eighth Amendment's ban on cruel and unusual punishments."  *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009).  "Thus, inmates have the right to be free from the 'unnecessary and wanton infliction of pain' at the hands of prison officials."  *Romano v. Howarth*, 998 F.2d 101, 104 (2d Cir. 1993) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  "A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components – one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect."  *Wright*, 554 F.3d at 268.  "The subjective component of the claim requires a showing that the defendant 'had the necessary level of culpability, shown by actions characterized by 'wantoness'' in light of the particular circumstances surrounding the challenged conduct."  *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).  "When prison officials are accused of using excessive force, the 'wantoness' issue turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  *Id.* (quoting *Hudson*, at 7).  "The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of 'contemporary standards of decency.'"  *Id.* (quoting *Hudson*, at 8).  "In assessing this component, the court must ask whether 'the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation.'"  *Id.* (quoting *Hudson* at 8 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (2000))).  In contrast, "when prison officials use force to cause harm maliciously and sadistically, 'contemporary standards of decency are always violated . . . . This is true whether or not significant injury is evident.'"  *Id.* (quoting *Hudson*, at 9).

As such, "where a prisoner's allegations and evidentiary proffers could reasonably, if credited, allow a rational factfinder to find that corrections officers used force maliciously and sadistically, [the Second Circuit] has reversed summary dismissals of Eighth Amendment claims of excessive force even where the plaintiff's evidence of injury was slight and the proof of excessive force was weak." *Wright*, 554 F.3d at 269 (citing cases).  Nevertheless, "the Eighth Amendment's prohibition against cruel and unusual punishment does not extend to '*de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.'" *Id.* (quoting *Hudson*, 503 U.S. at 10 ("'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973))))).

In the instant action, the evidence supporting Plaintiff's Eighth Amendment excessive force claim based on the alleged July 16, 2012 assault by Hannah and Skelly is too "thin" and thus "insufficient with respect to both the objective and subjective components of the Eighth Amendment claim. . . ."   *Wright*, 554 F.3d at 269.  In particular, the only evidence in the record to which Plaintiff points in support of his Eighth Amendment excessive force claim is a single note in his Ambulatory Health Record ("AHR"), establishing that on August 17, 2012, Plaintiff complained of left ear pain.  Plaintiff's Exh. Z-7.  The AHR, however, does not reflect that Plaintiff claimed to have sustained any injury to his left ear, nor is there any Use of Force Report or other mention in the record that Plaintiff sought medical treatment for any injuries related to the alleged July 16, 2012 use of force by Hannah and Skelly. Simply put, the scant evidence in the record consisting solely of Plaintiff's August 17, 2012 AHR entry, is

inconsistent with the injuries Plaintiff claims to have suffered as a result of Defendants use of excessive force.  *See Wright*, 554 F.3d at 269-70 (affirming summary judgment dismissing Eighth Amendment excessive force claim where inmate plaintiff suffered only acute shortness of breath for several minutes following alleged unprovoked assault by corrections officer who grabbed plaintiff and place his hand on site of plaintiff's surgical wound but evidence did not establish any resulting physical injuries); *Gashi v. County of Westchester*, 2007 WL 749684, at * 6 (S.D.N.Y. Mar. 12, 2007) (dismissing on summary judgment inmate plaintiff's Eighth Amendment excessive force claim where medical records documented "plaintiff's injuries as consisting solely of reddening and bruising of the eyes" which "minor injuries are inconsistent with plaintiff's claim that the officers used excessive force in that they choked and beat him, gouged his eyes, and repeatedly kicked him bloodily in the head and face.").  As such, Plaintiff's alleged physical injury is *de minimis*.

Defendants' Motion should be GRANTED as to Plaintiff's Eighth Amendment excessive force claim.

## 5.    Eighth Amendment – Conditions of Confinement

Plaintiff claims that he was denied showers, exercise, hair-cuts[17] and cleaning supplies between July 6 and August 3, 2012.  Complaint ¶¶  28, 40-43.  In support of summary judgment, Defendants argue that Plaintiff was not subjected to any constitutional violation by the Deprivation Orders about which Plaintiff complains.  Defendants' Memorandum at 11-13.  In opposition to summary judgment, Plaintiff maintains that the cases on which Defendants rely in support of summary judgment are

---

[17] Although Plaintiff maintains he was denied "hygiene," Complaint ¶ 40, copies of the Deprivation Orders establish Plaintiff was denied "haircuts."

inapposite, and that Plaintiff was deprived of his constitutional right to shower, to one

hour of daily exercise, personal hygiene products, hair-cuts and cell clean-up.  Plaintiff's

Response at 20-24.  Plaintiff further questions why the Deprivation Orders were

continued based on Plaintiff's continued disruption on the gallery, yet no additional

inmate misbehavior reports were filed against Plaintiff for such continued disruptive

behavior.  *Id.* at 22-23.  Defendants do not argue in further support of summary

judgment on this claim.

"While the Eighth Amendment's prohibition against cruel and unusual

punishment 'does not mandate comfortable prisons,' the conditions of confinement must

be at least 'humane.'"  *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (quoting

*Rhodes v. Chapman*, 452 U.S. 337, 329 (1981), and *Farmer v. Brennan*, 511 U.S. 825,

832 (1994)).  *See Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) ("The

conditions of a prisoner's confinement can give rise to an Eighth Amendment violation.

(citing *Farmer*, 511 U.S. at 832)).  "In such cases, a prisoner may prevail only where he

proves both an objective element – that the prison officials' transgression was

'sufficiently serious' – and a subjective element – that the officials acted, or omitted to

act, with a 'sufficiently culpable state of mind,' *i.e.*, with 'deliberate indifference to inmate

health or safety.'"  *Phelps,* 308 F.3d at 185 (quoting *Farmer*, 511 U.S. at 834).

With regard to the objective element, "prisoners may not be denied 'the minimal

civilized measures of life's necessities.'"  *Phelps*, 308 F.3d (quoting *Rhodes*, 452 U.S. at

347).  "Under the Eighth Amendment, States must not deprive prisoners of the 'basic

human needs – *e.g.*, food, clothing, shelter, medical care, and reasonable safety.'"  *Id.*

(quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)).  "Nor may prison officials expose

prisoners to conditions that 'pose an unreasonable risk of serious damage to [their] future health.'"  *Id.* (quoting *Helling*, at 35).  "Ultimately, to establish the objective element of an Eighth Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency."  *Id.* (citing *Helling*, at 35-36). As for the subjective element, "'a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exits, and he must also draw the inference.'"  *Id.* (quoting *Farmer*, 511 U.S. at 837).  In the instant case, however, Plaintiff cannot establish the objective element of an Eighth Amendment conditions of confinement claim because none of the Deprivation Orders to which Plaintiff was subjected denied Plaintiff, as a matter of law, "the minimal civilized measure of life's necessities" such that Plaintiff did not suffer an Eighth Amendment violation.  *Id.* at 164.

In particular, although the Deprivation Orders were first imposed on July 6, 2012, Plaintiff's cell clean-up privileges were restored on July 11, 2012, showers were restored on July 17, 2012, haircuts were restored on July 25, 2012, and outdoor exercise was restored on August 3, 2012.  *See* Deprivation Orders.[18]  Significantly, the denial of cell clean-up privileges for five days, absent some evidence that the cell conditions were egregious and not merely unpleasant, does not arise to an Eighth Amendment conditions of confinement violation.  *See Walker v. Schult*, 717 F.3d 119, 126-27 (2d Cir. 2013).  Here, Plaintiff's failure to provide even a description of the cell conditions after five days without use of any cleaning supplies simply fails to establish

---

[18] LaManna Declaration Exh. A; Plaintiff's Exh. Z-13.

that the cell conditions were so bad as to be "egregious."[19]  *See Dumpson v. Goord*, 2011 WL 4345760, at * 10 (W.D.N.Y. Sept. 15, 2011) (deprivation order denying inmate plaintiff cell clean-up for five days insufficiently severe to support Eighth Amendment violation).  As for Plaintiff's 9-day denial of haircuts, and even if Plaintiff had been denied hygiene products, the Second Circuit has held the deprivation of toiletries for approximately two weeks "while perhaps uncomfortable – does not pose such an obvious risk to an inmate's health or safety to suggest that the defendants were 'aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they also drew the inference.'"  *Trammell v. Keane*, 338 F.3d 155, (2d Cir. 2003) (quoting *Farmer*, 511 U.S. at 837) (bracket omitted).  Nor did the denial of showers for 11 days violate the Eighth Amendment.  *McCoy v. Goord*, 255 F.Supp.2d 233, 260 (S.D.N.Y. 2003) (holding "a two-week suspension of shower privileges does not suffice as a denial of 'basic hygienic needs,'" (quoting *Cruz v. Jackson*, 1997 WL 45348, at * 7 (S.D.N.Y. Feb. 5, 1997))).

Plaintiff's denial of out-of cell exercise for 28 days also fails to establish an Eighth Amendment violation.  In particular, "'[a]lthough the Second Circuit has approved one hour of outdoor recreation per day, it has not held that to be the constitutional minimum.'"  *Phelan v. Zenzen*, 2012 WL 5420423, at * 5 (W.D.N.Y. Nov. 6, 2012) (quoting *Dumpson*, 2011 WL 4345760, at *9-10  (deprivation order denying exercise for 31 days insufficiently severe for Eighth Amendment violation)).  Significantly, as long as the inmate is not deprived of all exercise, but only out-of-cell exercise, for a period of

---

[19] The court notes that Plaintiff's claim that he was denied cleaning supplies strongly suggests that cleaning supplies would have rectified any unpleasant cell condition, such that the cell was not filled with sewage, had inadequate ventilation, or a dirty mattress, all conditions that have been found to violate the Eighth Amendment.  *See Walker*, 717 F.3d at 126-27.

several weeks, no Eighth Amendment violation occurs.  *Id.*  Here, the record establishes

that Plaintiff, for the 28 days he was denied out-of-cell exercise, was permitted to

exercise inside his cell.  *See* LaManna Declaration ¶ 11 ("there was nothing preventing

inmate Guillory from exercising inside his cell").  Accordingly, Plaintiff was not denied

his Eighth Amendment rights based on the conditions of his confinement.

Defendants' Motion seeking summary judgment as to Plaintiff's Eighth

Amendment claim based on the conditions of confinement under the Deprivation Orders

should be GRANTED.

## 5.    Fourteenth Amendment Due Process

Insofar as Plaintiff maintains he was subjected to a false inmate misbehavior

report, *i.e.*, the July 6, 2012 Misbehavior Report, the filing of a false misbehavior report

generally does not give rise to a constitutional violation so long as the inmate against

whom the charges are levied is provided with a fair Tier III disciplinary hearing.[20]

*Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988) ("the key inquiry in assessing an

allegation that an inmate has been found guilty of false disciplinary charges is whether

or not the prison has provided the inmate with the minimum procedural due process

protections guaranteed by the Fourteenth Amendment").  Although Plaintiff maintains he

was denied due process at the Disciplinary Hearing when Defendants failed to provide

Plaintiff with a copy of the video of the July 6, 2012 search of Plaintiff by Skelly which

resulted in the possession of contraband tobacco and smuggling charges which Plaintiff

---

[20] Plaintiff also asserts for the first time in his affidavit opposing summary judgment that Defendants' assertions that the Deprivation Orders continued in effect because Plaintiff continued to be disruptive is illogical because not only were no new inmate misbehavior reports supporting the alleged continued disruptive behavior written against Plaintiff, but the deprivations against Plaintiff were lifted one at a time. Plaintiff's Affidavit ¶¶ 26-30.  Plaintiff, however, does not specify which DOCCS disciplinary regulation Plaintiff's disruptive behavior violated.  Nor does Plaintiff point to any DOCCS requirement prohibiting the partial lifting of a deprivation order in the absence of an inmate's complete cooperation.

asserts was recorded by cameras located at the Gate 13 entrance, Defendants, in support of summary judgment, have submitted a statement from LaManna explaining that the Gate 13 camera does not record but, rather, is a close circuit camera for which the video "goes to a screen in a security booth so that security staff can monitor movement in the corridor"  LaManna Declaration ¶ 14.  LaManna further states he has "personally advised inmate Guillory of this fact on multiple occasions."  *Id.*  Plaintiff submits no evidence contradicting LaManna's statements, nor does Plaintiff argue that LaManna, as Deputy Superintendent of Security at Southport at all times relevant to this action, *id.* ¶ 1, lacked the requisite personal knowledge to make such statements.

Moreover, even if the Gate 13 cameras had recorded video of the July 6, 2012 search of Plaintiff by Skelly, the record fails to establish a denial of due process because Plaintiff cannot establish a resulting denial of any protected liberty interest. Specifically, "[t]o prove a violation of due process, a plaintiff must establish that (1) he possessed a liberty interest and (2) defendants deprived him of that interest without sufficient process."  *Walker v. Fisher*, 523 Fed.Appx. 43, 44 (2d Cir. June 25, 2013) (citing *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001)); *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (quoting *Giano,* 238 F.3d at 225).  An inmate's protected liberty interest is implicated only where the conduct at issue imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  *See J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013) ("a prisoner has a liberty interest that is implicated by SHU confinement if it 'imposes [an] atypical and significant hardship in relation to the ordinary incidents of prison life.'" (quoting *Sandin*, 515 U.S at 484)).  In the instant case, the disciplinary

sentence imposed in connection with the guilty disposition of the Misbehavior Report did not result in the imposition of the requisite atypical and significant hardship.

Specifically, the record establishes that on September 17, 2012, Special Housing/Inmate Discipline Director Prack, upon reviewing Plaintiff's guilty disposition, modified the penalty to three months in SHU, and confiscation of the contraband, but no loss of good time.  Three months in SHU has been held too short to implicate a protected liberty interest.  *See Borcsok v. Early*, 299 Fed.Appx. 76, 78 (2d Cir. Nov. 7, 2008) (affirming summary judgment because 90-day confinement and concurrent loss of privileges did not constitute an atypical and significant hardship); *Sealey v. Giltner*, 197 F.3d 578, 583 (2d Cir. 1999) (finding 101-days SHU confinement, while "doubtless unpleasant," is "not an atypical and significant hardship").  Although a state-created right to good time creates a protected liberty interest, *see Abed v. Armstrong*, 209 F.3d 63, 66-67 (2d Cir. 2000) (holding prison inmates have protected liberty interest in good time credit earned requiring due process protections), Plaintiff's disciplinary sentence, as modified by Prack, did not include any loss of good time.  Finally, it defies logic that Plaintiff could have had any protected liberty interest in the tobacco, confiscated as contraband and which Plaintiff continues to deny was his.  Plaintiff points to no caselaw to the contrary, and the court's research reveals none.

Furthermore, although Plaintiff maintains that as a Cadre Worker, he was permitted to possess tobacco, such that the possession of tobacco could not support disciplinary charges of possession of contraband and smuggling, Complaint ¶ 43, as LaManna explains, Plaintiff was charged because inmates are only allowed to have tobacco at certain times and places and "it appeared that inmate Guillory was

attempting to smuggle contraband to inmates in the SHU housing units [which] is a serious security concern," because it is a breach of the trust placed in Cadre Workers and could lead to smuggling other contraband such as weapons or drugs into the SHU housing units.  LaManna Declaration ¶ 8.  Accordingly, because the guilty disposition on the alleged false misbehavior report resulted in no deprivation of any protected liberty interest to Plaintiff, no due process violation can be attributed to either the filing of a false misbehavior report or the failure to afford Plaintiff a disciplinary hearing in connection with the misbehavior report that fully comported with due process.  *See Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000) (no procedural due process claim can lie where plaintiff was not deprived of any protected liberty interest).  Summary judgment should be GRANTED to Defendants on this claim.

## CONCLUSION

Based on the following, Defendants' Motion (Doc. No. 106), should be GRANTED in part and DENIED in part.  The Clerk of the Court should be directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      July 14, 2015
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the Plaintiff and the attorneys for the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      July  14, 2015
            Buffalo, New York